United States District Court
Middle District of Florida
Jacksonville Division

**GAIL LOCKWOOD, INDIVIDUALLY AND ON
BEHALF OF ALL OTHERS SIMILARLY SITUATED,**

  *Plaintiffs,*

V.             **NO. 3:16-CV-965-J-39PDB**

**CIS SERVICES, LLC, ETC.,**

  *Defendants.*

---

# Report and Recommendation

This is a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, brought by fifty-five insurance adjusters. Before the Court is the parties' motion under *Lynn's Food Stores, Inc. v. U.S. by & through U.S. Dep't of Labor*, 679 F.2d 1350, 1354 (11th Cir. 1982)*,* for approval of a settlement and dismissal with prejudice, Doc. 218; and the plaintiffs' motion for attorney's fees ($454,843.25), costs ($16,051.84), and expenses ($9,835.54), Doc. 219.

The defendants oppose the latter motion. Doc. 220. They dispute neither entitlement to reasonable attorney's fees and costs nor the requested hourly rates. They dispute only the hours claimed and entitlement to expenses. They contend the hours should be reduced by at least ten percent to account for billing in quarter-hour increments, by $418.75 for unrelated work, by $14,855 for clerical work, by sixty percent of some hours for duplicative work, and by $11,147.50 for solicitation efforts. They contend litigation expenses ($13,304.35) are not recoverable because they are not enumerated as costs in 28 U.S.C. § 1920. They add the Court, in its discretion, may reduce the amounts further for reasons other than those presented.

## I.  Background

In July 2016, Gail Lockwood, on behalf of herself and others similarly situated, filed a two-count complaint. Doc. 1. She alleges the following facts.

The defendants are seven entities and an individual, Michael Stanley.[1] Doc. 1 ¶¶ 6–14. They are an "integrated enterprise." Doc. 1 ¶ 21. They advertise themselves as a "total solution company" that provides field-inspection services, adjusting services, loss-consulting services, and "workflow management" services. Doc. 1 ¶ 26.

In January 2013, the defendants hired Lockwood and paid her as an independent contractor. Doc. 1 ¶ 22. In January 2014, the defendants reclassified her and others as employees with no change in duties.[2] Doc. 1 ¶¶ 23, 57–58.

In a typical week, Lockwood worked six days and at least twenty hours of overtime. Doc. 1 ¶ 48. The defendants did not record the hours and made no payroll tax or other withholdings. Doc. 1 ¶¶ 51–52. The defendants paid the plaintiffs only when the plaintiffs worked and provided no minimum workweek guarantee. Doc. 1 ¶ 53. Before and after the reclassification, the defendants paid the plaintiffs a day-

---

[1]The entities are CIS Services, LLC; CIS Claim Services, LLC; CIS Group of Companies, LLC; CIS Group, LLC; CIS Alamo Holdings, LLC; CIS Specialty Claim Services, LLC; and Cornerstone Appraisal Services, LLC. Doc. 1 ¶¶ 6–12. All entities except one are Texas limited-liability companies (Cornerstone Appraisal Services is an Indiana limited-liability company). Doc. 1 ¶¶ 6–12. Stanley is the Chief Executive Officer of the companies. Doc. 1 ¶ 14.

[2]In the complaint, Lockwood includes allegations to support that she was an employee and not an independent contractor. Doc. 1 ¶¶ 29–46. For example, she alleges she and "similarly situated misclassified contractors" had no authority to hire assistants and did not invest in the facilities, and the defendants set all work hours and prohibited them from working for others. Doc. 1 ¶¶ 33, 34, 39–40, 42.

rate wage without overtime pay. Doc. 1 ¶¶ 48, 60. According to Lockwood, a previous wage lawsuit against the defendants shows willfulness. Doc. 1 ¶¶ 68–70.[3]

In count I, Lockwood asserts the defendants misclassified her and others as independent contractors and unlawfully failed to provide overtime pay. Doc. 1 ¶¶ 57, 93–98; Doc. 1-1. In count II, she asserts they unlawfully failed to provide overtime pay after reclassifying her and others as employees. Doc. 1 ¶¶ 23–24, 99–106. She seeks overtime pay, liquidated damages, attorney's fees, and costs. Doc. 1 at 17.

Michael Starzyk, Esquire, and Megan Mitchell, Esquire, moved for permission to appear pro hac vice to represent the plaintiffs. Docs. 3, 4. In their motions, they designated Amber Karns, Esquire, of the same firm, to serve as local counsel.[4] Karns is a member of the Florida Bar but does not reside in Florida. Doc. 220 at 7 n.3. The Court granted the motions. Doc. 7.

The defendants answered the complaint. Doc. 23. They assert affirmative defenses, including that Lockwood was exempt under FLSA, they had acted in good-faith reliance on Department of Labor regulations and interpretations, there is no group of similarly situated employees, and the defendants are not joint employers. Doc. 23 at 11–12.

---

[3]In the complaint, Lockwood alleges there are allegations common to others. Doc. 1 ¶¶ 75–90. The common allegations include that she and others are insurance adjusters and trainers performing work similar to her who were "subject to the same illegal pay practices," who were not guaranteed any work or paid on a salary basis, and who consistently worked more than forty hours a week without overtime pay. Doc. 1 ¶¶ 75–89.

[4]The defendants observe Starzyk and Mitchell failed to comply with Local Rule 2.02 because they did not designate as local counsel an attorney who resides in Florida. Doc. 220 at 7 n.3. In August 2018, the Court permitted Mitchell to withdraw. Doc. 209. In February 2019, the Court permitted Cathleen Ann Scott, Esquire, of Scott Wagner & Associates, PA, in Jupiter, Florida, to serve as local counsel. Doc. 230. In April 2019, the Court permitted Karns to withdraw. Doc. 236.

Seventy-one people filed a notice of consent to be included as a plaintiff. Docs. 6, 8, 21, 22, 27, 28, 41, 48, 49, 66, 68, 103–13, 115–32, 134–62, 164, 172, 173. The total number of current active plaintiffs is fifty-five; the others filed stipulated notices of voluntary dismissal. *See* Docs. 70, 200, 201, 206, 215; Doc. 218-1 at 13–14.

In August 2016, the plaintiffs moved for conditional certification of a proposed group of similarly situated individuals. Doc. 26. The defendants opposed the motion, Doc. 40, and, with permission, the plaintiffs replied, Doc. 47.

Beginning in September 2016, under the Court's scheduling order for FLSA cases, Doc. 5, the plaintiffs answered the Court's standard interrogatories, setting forth their periods of employment, their supervisors, their work schedules, their titles, their job descriptions, their rates of pay, their claimed hours and wages, whether they had complained, when they had complained, the response to any complaint, and whether they had maintained records. Docs. 32–39, 50–52, 57–65, 71. In turn, the defendants filed verified summaries showing pay periods, hours, and wages, or notices explaining they had provided the information to the plaintiffs. Docs. 44, 45, 46, 53, 67, 75, 84, 85, 89, 90.

In July 2017, the plaintiffs moved to toll the statute of limitations pending a ruling on the motion for conditional certification "to prevent daily erosion of the overtime claims of potential opt-in Plaintiffs" because "[c]laims under … FLSA do not generally relate back to the date of the original filing." Doc. 92 at 2. The defendants argued the case presented no exceptional circumstance warranting tolling. Doc. 94.

In September 2017, the Court granted the motion for conditional certification, Doc. 97, allowing Lockwood to send notice and consent forms to:

> [A]ll current and former independent contractors and employees of Defendants who have held the positions of 'adjusters,' 'appraisers,' 'claims analysts,' 'claims adjusters,' 'independent adjusters,' or 'litigation specialists' or who have performed duties similar to the duties performed by Plaintiffs in providing services related to adjusting

insurance claims in Florida for CIS clients, were paid a daily rate of pay for their services, and worked more than forty (40) hours in workweeks without being paid overtime compensation, at any time within the past three years prior to July 29, 2016.

Doc. 97 at 7. The Court directed the parties to add language to the proposed notice. Doc. 97 at 7–8. The parties disagreed on the language, Doc. 98, the Court directed changes, Doc. 99, and the parties submitted a joint proposed notice, Doc. 100, which the Court approved, Doc. 101.

Discovery proceeded, and the parties requested extensions, which the Court granted. Docs. 114, 133. The Court scheduled the case for a jury trial during the October 2018 trial term. Doc. 133.

In January 2018, the Court denied the plaintiffs' motion for equitable tolling, finding no extraordinary circumstances. Doc. 166 at 5–7. The same month, the plaintiffs moved to compel discovery, for sanctions, and to expedite ruling. Doc. 163. The Court heard arguments and granted the motion to the extent the plaintiffs requested an expedited ruling and otherwise denied the motion. Doc. 171.

In March 2018, the plaintiffs moved to compel discovery and to expedite ruling on the motion to compel. Doc. 176. The parties requested a status conference to discuss the possibility of adding a second group of plaintiffs for a later time period to the case and extending case management deadlines. Doc. 177. The Court heard arguments on the motion to compel and later granted the motion in part, directing the defendants to produce certain documents. Docs. 180, 207.

In April 2018, the Court denied the motion for a status conference and to extend case-management deadlines. Doc. 181. In May 2018, people who had worked for the defendants after July 30, 2016, including some plaintiffs in this case, therefore

filed a second case raising similar allegations against the same defendants. *See Edwards v. CIS Services, LLC*, 3:18-cv-637-J-39PDB.[5]

Between January and May 2018, the parties deposed seven witnesses. Doc. 219-2 ¶ 16(OO). The defendants deposed four plaintiffs (Lockwood, Juliano Valdivia, Iatrice Edwards, and Shandra McNeese) in Jacksonville on two consecutive days in April. Doc. 219-2 ¶ 16(OO). The plaintiffs deposed three witnesses in Southlake, Texas: two on two consecutive days in January (Stanley and Gerald Salas) and one in May (David Rollins). For the Florida depositions, Karns and Mitchell traveled to Jacksonville to defend the depositions. *See* Doc. 219-4 at 63–65 (April 24 through April 27, 2018, entries by Karns and Mitchell). For the Texas depositions, Starzyk and Karns travelled to Southlake. *See* Doc. 219-4 at 48, 49, 71 (January 29 through January 31, 2018, and May 29 through May 30, 2018, entries by Starzyk and Karns).

In May 2018, at mediation, the parties reached an impasse. Doc. 187. The plaintiffs moved for partial summary judgment. Doc. 190. They argued they were entitled to summary judgment on four issues: whether they are employees; whether an exemption applies; whether the defendants had acted in good faith; and whether the defendants had acted willfully. Doc. 190. The defendants argued there were genuine issues of material fact. Doc. 198. On whether the plaintiffs were employees, for some plaintiffs, the defendants conceded economic realities favored finding them employees. Doc. 198 at 5. For other plaintiffs—those who had formed limited-liability corporations and wanted to be independent contractors—the defendants argued there were genuine issues of material fact on whether they are independent contractors. Doc. 198 at 5–6; Doc. 205 at 2 n.2.

---

[5]*Edwards* remains pending. In November 2018, the Court granted a motion for conditional certification. *Edwards*, 3:18-cv-637 (Doc. 91). In March 2019, the undersigned directed the parties to confer on available dates in June for the undersigned to conduct a settlement conference. *Edwards*, 3:18-cv-637 (Doc. 152). The plaintiffs await a decision on the pending motions here, contending that may affect settlement in *Edwards*.

In September 2018, before a ruling on the motion for partial summary judgment, the parties notified the Court they had settled. Doc. 214. The Court removed the case from the trial term and directed the parties to submit a stipulated form of final order or judgment. Doc. 216.

In October 2018, the parties moved for approval of the settlement, Doc. 218, and the plaintiffs moved for approval of attorney's fees, costs, and expenses, Doc. 219. In November 2018, the defendants filed a response to the latter motion, Doc. 220, and the plaintiffs filed a reply, Doc. 224. These are the motions now before the Court.

In January 2019, the plaintiffs moved to expedite ruling on the motions.[6] Doc. 225. At a hearing later that month, the undersigned denied the motion, finding the plaintiffs had provided insufficient rationale to prioritize the pending motions over motions in other cases—such as social security cases—that had been pending longer. Docs. 228, 229.

## II.     Joint Motion for Approval of the Settlement

### A.     *Motion*

In the joint motion for approval of the settlement, the parties ask the Court to approve the settlement and, after the Court rules on the motion for attorney's fees, costs, and expenses, enter final judgment and dismiss the case with prejudice. Doc. 218 at 6. The parties represent:

- The parties settled "to avoid the uncertainties of litigation associated with this type of action." Doc. 218 at 1.

---

[6]The plaintiffs thrice moved to expedite rulings, Docs. 163, 176, 225, a practice unusual in this district and one that may have been reconsidered had resident local counsel been retained earlier. The motions were not designated as emergencies and therefore were not contrary to at least the letter of Local Rule 3.01(e). They are not held against the plaintiffs in this report and recommendation.

- The settlement is a reasonable settlement of a bona fide dispute. Doc. 218 at 2.

- The parties agree the defendants reserve the right to challenge the requested attorney's fees and costs (other than rates). Doc. 218 at 3.

- The parties were represented by competent counsel with extensive experience with FLSA cases. Doc. 218 at 3–4.

- The cost of continued litigation would be high given the number of plaintiffs and the nature of the claims and defenses, and the proposed settlement minimizes costs, time, and resources. Doc. 218 at 4.

- The parties have sufficiently investigated the case, having exchanged thousands of documents and conducted depositions. Doc. 218 at 4.

- The defendants "strongly dispute" the claims, and the plaintiffs could have recovered nothing or an unknown amount had the case proceeded. Doc. 218 at 4.

- The payments for each plaintiff are "substantial while also taking into account Defendants' potential defenses." Doc. 218 at 5. (In the motion for attorney's fees, costs, and expenses, the plaintiffs state the settlement amounts represent a "full recovery" of unpaid overtime plus liquidated damages for all plaintiffs, and the average individual settlement is $8,154.55, the median individual settlement is $5,938.94, and six plaintiffs will receive more than $20,000 each. Doc. 219 at 9. They further state that, on amounts, they conceded only that the defendants intended a one-hour lunch break to be uncompensated. Doc. 219 at 11.)

- The parties agreed to the payments separately from any amount the Court may award as attorney's fees. Doc. 218 at 5.

- Counsel for both sides believe the proposed settlement is fair and reasonable. Doc. 218 at 5.

- The original plaintiff (Lockwood) and later plaintiffs Iatrice Edwards, Juliano Valdivia, and Shandra McNeese were deposed and are due "modest" service payments for their time helping the plaintiffs' counsel and attending depositions, which lasted full days. Doc. 218 at 5–6.

8

**B.**     *Agreement*

With the joint motion for approval of the settlement, the parties filed a settlement agreement and exhibits. Doc. 218-1. In the agreement:

- The plaintiffs state they believe their claims are meritorious but voluntarily agree to the settlement to avoid the time, expense, and uncertainty of litigation. Doc. 218-1 at 2. The defendants deny liability and dispute all allegations of FLSA violations. Doc. 218-1 at 1.

- The parties agree to a compromise to resolve the matter. Doc. 218-1 at 1. No party will be deemed a "prevailing party," except that the defendants acknowledge the plaintiffs are entitled to reasonable attorney's fees. Doc. 218-1 at 6 (V.B).

- The plaintiffs agree that the settlement is a fair and equitable resolution of their claims and they "have no claim as to any wages, overtime compensation, liquidated damages or attorney's fees due or owing to them" from the defendants from July 29, 2013, to July 29, 2016. Doc. 218-1 at 2.

- The plaintiffs agree to release the defendants from the claims in this action and any claims related to "the classification of claims adjusters as independent contractors and/or exempt employees or the payment of overtime to the claims adjusters during" the relevant time. Doc. 218-1 at 5–6 (IV.A–B).

- The plaintiffs agree to ask the Court to issue a final judgment and order of dismissal like one attached as Exhibit D to the agreement. Doc. 218-1 at 7 (VI.).

- The defendants agree to pay $459,500: $448,500 for wages, benefits, and liquidated damages (half for wages and half for liquidated damages); a $5,000 incentive service award to Lockwood; and a $2,000 incentive service award each to Edwards, Valdivia, and McNeese (totaling $6,000). Doc. 218-1 at 2 (I.A).

- The parties represent that each plaintiff's share of the settlement amount is based on individual pay and time records. Doc. 218-2 at 2 (I.A).

- The plaintiffs agree that the payments compensate them for all wages to which they are entitled. Doc. 218-1 at 6 (IV.C).

- The plaintiffs agree that, as a condition of receiving the payments, each plaintiff will execute an individual waiver and release. Doc. 218-1 at 6 (IV.D).

- The parties agree that the incentive awards for Lockwood, Edwards, Valdivia, and McNeese are in addition to their settlement amounts for wages and liquidated damages for providing "unique services," including helping counsel or being deposed. Doc. 218-1 at 4 (I.B).

- The defendants agree to separately pay attorney's fees and costs deemed reasonable by the Court. Doc. 218-1 at 2 (I.A).

- The defendants agree that the billing rates are reasonable but reserve the right to object to the number of hours claimed. Doc. 218-1 at 4 (I.C).

- The parties agree that the amount of attorney's fees will not affect the amounts paid to the plaintiffs. Doc. 218-1 at 4 (I.C).

- The parties agree that the payment of attorney's fees ordered by the Court will constitute full satisfaction of any claim for attorney's fees. Doc. 218-1 at 6 (V.).

- The parties agree that the payments will be made according to a schedule.[7] Doc. 218-1 at 5 (III.A–D).

- The parties agree to follow certain procedural steps to end the litigation. Doc. 218-1 at 4–5 (II).

---

[7]The parties agree to the following payment schedule. Within fifteen days after the Court approves the settlement agreement and determines a reasonable amount of attorney's fees, the defendants must mail each plaintiff a check for the total amount of liquidated damages owed and mail to the plaintiffs' counsel fifty percent of the attorney's fees and costs award. Doc. 218-1 at 5 (III.A). Within seventy-five days after the Court approves the settlement agreement and determines a reasonable amount of attorney's fees, the defendants must mail each plaintiff a check for the remaining settlement amount owed; must mail checks to Lockwood, Edwards, Valdivia, and McNeese for the respective incentive-service-award amount; and must mail the plaintiffs' counsel the remaining fifty percent owed for attorney's fees and costs. Doc. 218-1 at 5 (III.B). All checks remain negotiable for 120 days from the date of mailing. Doc. 218-1 at 5 (III.C).

- The parties agree that the "failure of the Court to award Class Counsel the full amount of attorney's fees and costs requested by Class Counsel in their Motion for Award of Attorney's Fees and Costs will not be a reason to nullify the Agreement." Doc. 218-1 at 8 (VII.).

- The parties agree that some plaintiffs "have opted in to a separate lawsuit [*Edwards*]," and the agreement, "including without limitation the release herein, does not release or affect in any way any Parties' claims or defenses in the Edwards Litigation, and is inadmissible in the Edwards Litigation." Doc. 218-1 at 6 (IV.E).

- The parties agree that if the defendants fail to timely pay any amounts owed, after written notice and a seven-day cure period, the plaintiffs' counsel may ask the Court to enter an amended judgment enforcing the agreement, which is Exhibit E to the agreement. Doc. 218-1 at 7 (VI.B).

- The parties agree that "[i]n the event the Court does not finally approve the Agreement as provided herein for any reason, including without limitation the releases in the same form and scope as set forth above or the [Proposed] Final Judgment … this Agreement shall be null and void … unless the Court has partially approved this settlement and the Settling Parties mutually agree to submit a revised settlement agreement that conforms to the Court's order." Doc. 218-1 at 7–8 (VII.).

- The parties explain they have been represented by counsel of choice. Doc. 218-1 at 8 (VIII.D).

- The parties agree "the Court shall have continuing jurisdiction to resolve any disputes that may arise with regard to the terms and conditions of this Agreement as set forth herein." Doc. 218-1 at 9 (VIII.N).

The agreement also includes recitals and provisions addressing assignments, choice of law,[8] counterparts, headings, construction, severance,[9] authorizations, and incorporation of exhibits by reference. Doc. 218-1 at 8–9 (VIII.).

As Exhibit A, the parties include a two-page list identifying, for each plaintiff, the wage payment, the liquidated damages payment (in all cases equaling the wage payment), the total wage-plus-liquidated-damages payment, a service payment if any, and the total payment owed. Doc. 218-1 at 12–14.

As "Composite Exhibit B," the plaintiffs include individual waivers and releases signed by each plaintiff. Doc. 218-1 at 15–180. Each waiver and release states that the plaintiff signs the waiver and release knowingly and voluntarily, "subject to all of the terms and conditions set forth herein and the [s]ettlement [a]greement"; the defendants deny liability; the defendants will pay the plaintiff a sum specific to that plaintiff; each plaintiff agrees to be bound by the Court's judgment; for the payment, the plaintiff agrees to release the defendants from the claims and from any wage-related claims during the relevant time period; the agreement does not affect *Edwards* if the plaintiff also joined that case; and the Court reserves jurisdiction to enforce the agreement. *See, e.g.*, Doc. 218-1 at 19–21.

As Exhibit C, the parties provide a list of the plaintiffs who have also consented to be plaintiffs in *Edwards* and the dates on which they opted in to each case. Doc. 218-1 at 181–82.

---

[8]This report and recommendation does not address whether federal or Florida law would govern an action seeking enforcement of the agreement.

[9]Regarding the severance provision, the parties agree that any invalid or illegal provision will be severed from the agreement, except as stated in the nullification provision. Doc. 218-1 at 9 (VIII.K). They explain, "Notwithstanding the foregoing, the release set forth above in this Agreement is an essential part of the Agreement. If such release is held not to be valid or is modified in any way, Defendants have no obligations under this Agreement." Doc. 218-1 at 9 (VIII.K).

As Exhibit D, the parties provide a proposed final judgment. Doc. 218-1 at 183–86. The proposed final judgment states:

- the Court finds the terms of the settlement agreement fair, reasonable, and adequate;

- the Court approves the settlement agreement and release;

- the plaintiffs are deemed to have released all claims against the defendants as set forth in the settlement agreement;

- the Court dismisses the case with prejudice and "permanently enjoins and restrains all individuals from asserting any and all claims that were released pursuant to the Settlement Agreement and Release"; and

- the Court reserves jurisdiction over the action "for the purposes of supervising the implementation, enforcement, construction and interpretation of the Settlement Agreement and Release, the Plaintiffs' attorney's fees and costs and all orders and judgments entered in connection therewith."

Doc. 218-1 at 184–86.

As Exhibit E, the parties provide a proposed "Agreed Amended Judgment to Enforce Settlement Agreement" to be entered if the defendants fail to timely make payments. Doc. 218-1 at 186–89.

## C.    *Authority*

Passed in 1938, FLSA establishes minimum wages and maximum hours "to protect certain groups of the population from substandard wages and excessive hours which endanger[] the national health and well-being and the free flow of goods in interstate commerce." *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 706 (1945).

A FLSA case may be brought by "any one or more employees for and in behalf of h[erself] or themselves and other employees similarly situated," though no employee may be a plaintiff in the action unless the employee files on the docket

written consent. 29 U.S.C. § 216(b). The purpose of a collective action is to "avoid multiple lawsuits where numerous employees have allegedly been harmed by a claimed violation or violations of [] FLSA by a particular employer."[10] *Prickett v. Dekalb Cty.*, 349 F.3d 1294, 1297 (11th Cir. 2003).

If an employee proves an employer violated FLSA, the employer must pay unpaid wages for up to two years (or three if the employer intentionally violated the law, *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988)), an equal amount as liquidated damages absent the employer's proof of good faith and reasonable grounds for believing it was not violating FLSA, 29 U.S.C. § 260, and "a reasonable attorney's fee to be paid by the defendant, and costs of the action," 29 U.S.C. § 216(b).

To foster FLSA's purpose and to prevent an employer from using its superior bargaining position to take advantage of an employee, the Eleventh Circuit, in *Lynn's Food Stores,* 679 F.2d at 1354, places limits on the ability of private parties to settle a FLSA case. *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1307 (11th Cir. 2013). To do so, they must present their agreement to the court, and the court must scrutinize it for fairness. *Id.* at 1306–07. If the agreement reflects a fair and reasonable compromise over a disputed issue, the court may approve it to encourage settlement. *Lynn's Food Stores*, 679 F.2d at 1354.

A court should presume a settlement is fair and reasonable. *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). Factors pertinent to fairness and reasonableness

---

[10]To maintain a FLSA collective action, plaintiffs must show they are "similarly situated." *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001). When a FLSA case is brought as a collective action, the Eleventh Circuit has suggested a two-stage approach, to be used in a court's discretion: a notice stage (also known as a "conditional certification" stage) during which a court may conditionally certify a class of people to receive notice of the lawsuit and an opportunity to consent to join as plaintiffs, and a later stage (also known as a "final certification" stage)— typically precipitated by a motion for decertification by the defendant—during which a court may decide the case should not be maintained as a collective action because of lack of similarity. *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 952–53 (11th Cir. 2007).

may include (1) the existence of collusion behind the settlement; (2) the complexity, expense, and likely duration of the case; (3) the stage of the proceedings and the discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel. *Leverso v. SouthTrust Bank of Ala. Nat. Ass'n*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994).

In deciding whether a settlement is fair and reasonable, no binding precedent requires different treatment of a FLSA collective action and a FLSA individual action. Some district courts will consider final certification (i.e. whether the plaintiffs are similarly situated), while other district courts deem such consideration unnecessary. *Compare, e.g., Ruddell v. Manfre*, No. 3:14-cv-873-J-34MCR, 2015 WL 7252947, at *1–3 (M.D. Fla. Nov. 17, 2015) (unpublished) (deeming consideration of final certification necessary), *with Campbell v. Pincher's Beach Bar Grill Inc.*, No. 2:15-cv-695-FtM-99MRM, 2017 WL 3700629, at *1–2 (M.D. Fla. Aug. 24, 2017) (unpublished), *report and recommendation adopted*, 2017 WL 3668889 (deeming consideration of final certification unnecessary).

Because FLSA does not contemplate representative plaintiffs, a service payment to a plaintiff is unwarranted unless the plaintiff faced risk, incurred expenses, or actively participated in the case and helped counsel. *Plummer v. PJCF, LLC*, No. 2:15-cv-37-FtM-38CM, 2015 WL 5952426, at *3 (M.D. Fla. Oct. 13, 2015) (unpublished). This Court has approved service payments to plaintiffs who participated in discovery or otherwise devoted time to the case. *See, e.g.*, *Hosier v. Mattress Firm, Inc.*, No. 3:10-cv-294-J-32JRK, 2012 WL 2813960, at *5 (M.D. Fla. June 8, 2012) (unpublished), *report and recommendation adopted*, 2012 WL 28386102012.

If no federal claims remain, to avoid becoming embroiled in state-law controversies, some judges will decline to retain jurisdiction to enforce the terms of a FLSA settlement agreement. *See, e.g., Murphy v. Enhanced Recovery Co., LLC*, No. 3:14-cv-94-J-39MCR, 2014 WL 6871583, at *4 (M.D. Fla. Dec. 3, 2014) (unpublished).

To foster judicial economy, retaining jurisdiction may be warranted, including if there are many plaintiffs. *See, e.g., Hosier*, 2012 WL 2813960 at *4.

## D.    Analysis

Here, the settlement is a fair and reasonable compromise of disputed issues, as evidenced by the parties' representations and a review of the pleadings, affirmative defenses, verified wage summaries, discovery motions, summary-judgment motion and response, motion to approve the settlement, settlement agreement, and the motion for attorney's fees, costs, and expenses. The plaintiffs are represented by competent counsel with extensive FLSA experience. The plaintiffs signed the agreements "knowingly and voluntarily." *See, e.g.,* Doc. 218-1 at 19. While denying liability, the defendants are paying all overtime wages and liquidated damages allegedly owed. There is no stated or apparent collusion. Without a settlement, the parties would have to proceed to trial, and the plaintiffs would risk receiving nothing. The parties and their counsel believe this is a reasonable settlement. Although arguably unnecessary for settlement approval, the plaintiffs are similarly situated, at least insofar as they are current and former independent contractors or employees of the defendants within the three years before July 29, 2016, had the same duties, and were paid in the same manner; and, in any event, the settlement amount is divided based on individual circumstances and provides all amounts allegedly due.

The parties have made retaining jurisdiction a condition in the individual waivers and releases and have included retention of jurisdiction in the proposed final judgment. They provide no rationale for retaining jurisdiction indefinitely, and no rationale is apparent. But retaining jurisdiction for a definite period is warranted under the circumstances: the many plaintiffs, the desirability of addressing global issues in this case rather than in multiple new cases, and the possibility that payment issues here could affect a potential settlement in *Edwards*. Considering the payment schedule (all payments must be made within 75 days of an order on the motions for

settlement approval and attorney's fees), I recommend retaining jurisdiction for 120 days, which cautiously adds a cushion to the last payment date.

### III.  The Plaintiffs' Motion for Attorney's Fees, Costs, and Expenses

### A.  *Motion, Exhibits, Response, and Reply*

The plaintiffs seek $454,843.25 in attorney's fees for 1,511.65 hours of work by four attorneys and one paralegal, $16,051.84 in costs, and $9,835.54 in expenses.[11] Doc. 219 at 21–25; Doc. 219-4 at 85. The fees are based on the following hours, rates, and calculations:

| Name | Hourly Rate | Hours | Amount |
|------|------------|-------|--------|
| Michael Starzyk, Esquire | $475 | 120.5 | $57,237.50 |
| Michael Starzyk, Esquire | $450 | 13.5 | $6,075 |
| Michael Starzyk, Esquire | $425 | 15.5 | $6,587.50 |
| April L. Walter, Esquire | $450 | 171 | $76,950 |
| April L. Walter, Esquire | $425 | 2 | $850 |
| April L. Walter, Esquire | $400 | 12 | $4,800 |
| Amber L. Karns, Esquire | $340 | 371.75 | $125,395 |
| Amber L. Karns, Esquire | $325 | 189 | $61,425 |
| Megan M. Mitchell, Esquire | $300 | 196 | $58,800 |
| Megan M. Mitchell, Esquire | $275 | 10.75 | $2,956.25 |
| Melissa Crain, Paralegal | $130 | 405.9 | $52,767 |
| **Total** | | | **$454,843.25** |

Doc. 219-2 ¶ 37.

---

[11]Because of separately paginated tables of contents and exhibits, the page numbers on the fees motion do not match the page numbers on the docket heading. Citations in this report and recommendation are to the page number on the docket heading.

The plaintiffs' attorneys contend they obtained "extraordinary results" because the defendants will pay all unpaid overtime owed plus liquidated damages for all plaintiffs in "substantially greater" amounts than ordinary for FLSA collective actions "despite a defense by Defendants led by highly-qualified counsel." Doc. 219 at 9–10. The plaintiffs contend that, although they "will be fully compensated pursuant to the proposed settlement, a lodestar analysis is appropriate here [because] the Parties have explicitly agreed to submit such issues to the Court." Doc. 219 at 12.

The plaintiffs contend that, in "large, complex cases," the market for rate comparison is "nationwide" instead of the local market. Doc. 219 at 15. They ask the Court to award fees at the rates listed above and cite exhibits about billing-rate surveys. Doc. 219 at 13–17; Doc. 219-5; Doc. 219-6; Doc. 219-7; Doc. 219-8; Doc. 219-9; Doc. 219-11 at 5–10, 12–15.

The plaintiffs contend their attorneys have "significant experience" in FLSA collective actions and spent more than 1,600 hours "investigating the allegations, conferring with Plaintiffs and other potential plaintiffs/witnesses, preparing and assessing the pleadings and other motions filed in this case, reviewing more than [28,000] pages of relevant documents exchanged in discovery, administering notice, exchanging more than 3,000 emails, and negotiating and documenting this settlement." Doc. 219 at 20. They state, "Because this case involved an estimated class of at least [230] similarly situated adjusters who worked for Defendants without overtime pay in the last three years … Class Counsel had to regularly turn down other matters to ensure they had the resources necessary to prosecute this action available." Doc. 219 at 20–21.

The plaintiffs seek $16,051.84 in costs under 28 U.S.C. § 1920 for filing fees, pro-hac-vice fees, service-of-process fees, deposition and hearing transcripts, and copies, itemized in an exhibit. Doc. 219 at 13; Doc. 219-10. Specifically, they seek $1,248 in filing and service-of-process fees; $9,229.59 for deposition and hearing transcripts, including transcribing video depositions; and $5,574.25 for copies. Doc.

18

219 at 13–15. For the copies, the plaintiffs explain the parties exchanged 28,000 pages of documents in discovery and contend printed copies of the pay and personnel records were necessary to calculate damages and to use as deposition exhibits. Doc. 219 at 14–15.

The plaintiffs also seek expenses. Doc. 219 at 23–24. They seek $8,083.50 in travel and lodging expenses for attending hearings, the mediation, and depositions. Doc. 219 at 24. They explain they had tried to affiliate with local counsel in Jacksonville but had been unsuccessful. Doc. 219 at 24. They contend, "It is not unreasonable for Plaintiffs[] to have retained highly experienced out-of-state counsel given the nature and complexity of their claims." Doc. 219 at 24. They seek $411.40 in postage expenses for delivering notice to potential plaintiffs and $290.64 in postage expenses for delivering the complaint to the clerk and courtesy copies of filings to chambers.[12] Doc. 219 at 25. They seek $1,050 in mediator fees. Doc. 219 at 26.

With the motion, the plaintiffs include another copy of the settlement agreement, Doc. 219-1; a declaration by Starzyk, Doc. 219-2; a copy of the representation agreement between Lockwood and counsel, Doc. 219-3; billing records, Doc. 219-4; a survey on rates and billable hours, Doc. 219-5; an article about billing rates in Texas, Doc. 219-6; a LexisNexis article about billing rates by practice area, Doc. 219-7; a survey about billing rates, Doc. 219-8; another billing survey, Doc. 219-9; a list of costs and expenses incurred, Doc. 219-10; and an "appendix of unpublished authorities," Doc. 219-11. *See also* Doc. 219 at 8 (table of exhibits).

---

[12]The scheduling order requires the parties to deliver to chambers a courtesy copy of all dispositive and *Daubert* motions and responses, including copies of relevant exhibits and depositions. Doc. 82 at 2–3. Excerpts of deposition transcripts were used in support of the plaintiffs' motion for partial summary judgment. *See* Doc. 190 at 11 (table of exhibits listing transcript excerpts from depositions of Gerald Salas, Michael Stanley, Iatrice Edwards, Juliano Valdivia, and Gail Lockwood). The plaintiffs also cited as an exhibit transcript excerpts from oral argument on a motion to compel discovery. Doc. 190 at 12.

In the declaration by Starzyk—the managing shareholder of Starzyk & Associates, P.C.—he represents:

- He (Starzyk) has been licensed to practice law in Texas since 1993, is a member in good standing of Colorado and Texas courts, and is admitted to practice before the United States Court of Appeals for the Fifth Circuit. Doc. 219-2 ¶ 2.

- His firm "almost exclusively" handles employment cases and has handled "several large FLSA collective actions," including cases with thousands of eligible plaintiffs. Doc. 219-2 ¶ 6. Many of those cases involve the same issues litigated in this case. Doc. 219-2 ¶ 7. Four or five attorneys usually work for the firm. Doc. 219-2 ¶ 9.

- Karns received her juris doctoral degree from the University of Florida Levin College of Law in 2002. Doc. 219-2 ¶ 10. She worked as a Judge Advocate in the United States Air Force for more than ten years. Doc. 219-2 ¶ 10. She has been licensed to practice in Texas since 2012 and joined a national employment-defense firm before joining Starzyk & Associates in 2015. Doc. 219-2 ¶ 10.

- Walter received her juris doctoral degree from Loyola Law School in 1996, graduating first in her class. Doc. 219-2 ¶ 11. She worked in employment defense in California and has been licensed to practice in Texas since 2006. Doc. 219-2 ¶ 11. She worked for Starzyk & Associates from January 2007 to June 2018. Doc. 219-2 ¶ 11.

- Mitchell received her juris doctoral degree in 2013 from Baylor School of Law. Doc. 219-2 ¶ 12. She worked for Starzyk & Associates from May 2013 to July 2018. Doc. 219-2 ¶ 12.

- Crain received an Advanced Paralegal Certificate in 2011 from Lonestar College. Doc. 219-2 ¶ 13. She joined Starzyk & Associates in 2013. Doc. 219-2 ¶ 13.

- "The overtime settlement amounts negotiated for the Plaintiffs represent 200% of the unpaid overtime (i.e., the settlement amount accounts for 100% payment of the unpaid overtime plus 100% of liquidated damages) for the full three-year period at issue. Thus Plaintiffs are fully compensated under the settlement for all overtime hours worked for Defendants between July 29, 2013 and July 29, 2016." Doc. 219-2 ¶ 20.

- They represented the plaintiffs on a contingency basis and had agreed to a forty percent interest in "any and all sums recovered against Defendants."[13] Doc. 219-2 ¶ 24.

- He (Starzyk) or someone else with the firm "contacted several Plaintiffs' employment lawyers in the Jacksonville area with FLSA and collective action experience regarding a local counsel arrangement. Each declined for various reasons. Plaintiffs incurred litigation expenses for travel to/from and lodging in Jacksonville (for depositions and hearings) and Southlake, Texas (for depositions of defendant Michael Stanley and other CIS corporate officers)." Doc. 219-2 ¶ 28.

- The firm has "routinely collected [their] designated rates (or greater) that have been billed for this matter on other matters."[14] Doc. 219-2 ¶ 36.

- He (Starzyk) reviewed all billing entries and excluded time "found to be unproductive, excessive, or redundant," including 110.75 hours of work by junior associates and law clerks (totaling $21,600). Doc. 219-2 ¶¶ 34, 41.

- He (Starzyk) excluded $3,332.74 from the requested amount for costs and expenses. Doc. 219-2 ¶ 42.

- In his (Starzyk's) opinion, the fees are reasonable, necessary, and customarily charged for this type of case. Doc. 219-2 ¶ 45.

- The firm "typically receives five to ten new business opportunities <u>per week</u> from individuals and businesses seeking to pursue or needing to defend employment-related claims. … Since first starting work on this case over two years ago, [the] firm has been unable to pursue numerous cases because our attorney resources were already

---

[13]The representation agreement with Lockwood states she agrees to pay "the greater of (a) our contingency interest in your claims, (b) any amount awarded by the Court or arbitrator(s) to compensate us for attorney's fees incurred in representing you and others similarly situated, or (c) any amount of a settlement package that has been earmarked to compensate us for attorney's fees incurred in representing you and others similarly situated." Doc. 219-3 at 3.

[14]Starzyk also describes the procedural history of the case and includes an outline of the work done on the case. Doc. 218-2 ¶¶ 14–16.

assigned to this individual and collective action." Doc. 219-2 ¶ 48 (emphasis in original).

- "Following a periodic review of rates in each of 2016, 2017, and 2018, some attorney's fee rates increased."[15] Doc. 219-2 at 11 n.1.

The defendants observe the plaintiffs' attorneys billed in quarter-hour increments instead of "one-tenth hour increments as is typical within this circuit." Doc. 220 at 4. The defendants cite cases in which courts have held this practice results in overbilling and warrants an across-the-board reduction in the hours sought. Doc. 220 at 4 (citing *George v. GTE Directories Corp.*, 114 F. Supp. 2d 1281 (M.D. Fla. 2000), *Inman v. Apfel*, No. 3:97-cv-1273-J-HTS, 2000 WL 1221858 (M.D. Fla. July 14, 2000) (unpublished), *B/E Aerospace, Inc. v. Travelers Cas. & Sur. Co. of Am.*, No. 16-81293-cv-Middlebrooks/Brannon, 2017 WL 9288915 (S.D. Fla. Aug. 29, 2017) (unpublished), and *Barlow v. Sun Life & Health Ins. Co.*, 3:09-CV-1063-J-32JBT, 2011 WL 3475298 (M.D. Fla. Aug. 9, 2011) (unpublished)). They contend an across-the-board reduction of at least ten percent is appropriate to account for this practice. Doc. 220 at 5.

The defendants contend some billing entries were for work unrelated to this case, including work for *Edwards*. Doc. 220 at 5. They attach a list of those entries, totaling $418.75. Doc. 220 at 5; Doc. 220-1. They contend those entries should be excluded entirely. Doc. 220 at 5.

The defendants contend many entries by Crain are for clerical tasks and not recoverable, like filing documents and calendaring deadlines. Doc. 220 at 5. They attach a list of entries, totaling $14,855. Doc. 220 at 6; Doc. 220-2. They contend those entries should be excluded entirely. Doc. 220 at 6.

---

[15]The representation agreement with Lockwood states that the billing rates are "subject to adjustment from time-to-time." Doc. 219-3 at 3.

The defendants contend the billing records are "replete" with "duplicative entries for multiple attorneys performing the same tasks and for time spent in internal conferences between multiple attorneys in Plaintiffs' counsel's firm." Doc. 220 at 6. The defendants challenge the "excessive amount of internal conferences," the attendance of multiple attorneys at depositions, mediations, or hearings, and travel for those events, and they contend the plaintiffs have not shown why they are reasonably necessary. Doc. 220 at 7. They attach a list of those entries, totaling $68,751.50. Doc. 220 at 6–7, Doc. 220-3. They contend a sixty percent reduction of those fees is appropriate. Doc. 220 at 7.

The defendants contend fees for time "spent soliciting additional opt-in plaintiffs" are not recoverable. Doc. 220 at 7–8. They attach a list of those entries, totaling $11,147.50. Doc. 220 at 8, Doc. 220-4. They contend those entries should be excluded entirely. Doc. 220 at 8.

The defendants challenge any award of expenses not enumerated as costs under 28 U.S.C. § 1920, such as expenses for travel, mediation, and delivery. The amount totals $13,304.35, which they contend should be excluded entirely. Doc. 220 at 10. They contend that, if the expenses are not per se excluded because they are not allowable "costs," they should be excluded as duplicative and excessive. Doc. 220 at 9 n.5. They contend the plaintiffs should not be able to recover expenses for multiple attorneys' travel to attend "routine matters" with no showing that each attorney provided a distinct contribution, particularly when the attorneys also seek fees for travel time. Doc. 220 at 9 n.5.

The plaintiffs reply they recently litigated large FLSA collective actions and, in three cases, including one in this Court, courts have approved the settlements and attorney's fees despite billing in quarter-hour increments. Doc. 224 at 2 (citing *Hanze et al. v. Am. Strategic Ins. Corp.*, No. 8:17-cv-2432-T-17AAS (M.D. Fla.), *Branham et al. v. Crawford & Co.*, No. 1:15-cv-2401-RWS (N.D. Ga.), and *Tabron et al. v. Crawford & Co.*, No. 1:16-cv-940-RWS (N.D. Ga.)). They cite four district-court cases

23

from other circuits awarding fees despite billing in quarter-hour increments. Doc. 24 at 2–3 (citing *Garcia v. R.J.B. Properties, Inc.*, 756 F. Supp. 2d 911, 918 (N.D. Ill. 2010), *Vallies v. Sky Bank*, 2:01cv1438, 2011 U.S. Dist. Lexis 110597, at *32–33 (W.D. Pa. Sept. 28, 2011) (unpublished), and *Potter v. BCBS of Michigan*, 10 F. Supp. 3d 737, 749 (E.D. Mich. 2014)). They contend an across-the-board reduction is unnecessary because there is no evidence of inflated or excessive billing, the firm regularly bills in quarter-hour increments, and the billing entries are detailed. Doc. 224 at 2.

The plaintiffs contend it is reasonable to have more than one attorney in a firm contribute to litigation and observe that the defendants are represented by four attorneys from three offices in two states. Doc. 224 at 3. They contend they reduced costs by deposing defense witnesses in Dallas (where CIS is headquartered), and the defendants also had multiple attorneys present to defend two of the three depositions. Doc. 224 at 4. They contend it is reasonable "to have two attorneys working together to prepare and then offer four plaintiffs for deposition." Doc. 224 at 4. They explain the Court has conducted only two hearings, one attended by one attorney, and one attended by two attorneys by telephone. Doc. 224 at 4. (Since filing the reply, the Court has had additional telephone conferences with the parties, and the plaintiffs have not sought to supplement their fee request.)

Regarding solicitation, the plaintiffs explain each entry to which the defendants refer "references either a named Plaintiff or corresponds with the filing of Court-authorized consent forms following Notice." Doc. 224 at 1. They explain that, because the attorneys regularly represent individuals in large FLSA collective actions, they are "extremely mindful of the prohibitions against solicitation of prospective clients."[16] Doc. 224 at 1. They explain that "[r]esponding to inquiries from

---

[16]The plaintiffs cite Rule 4-7.18(a) of the Rules Regulating the Florida Bar and Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct. Rule 4-7.18 prohibits solicitation of a prospective client when "a significant motive for the lawyer's doing so is the lawyer's pecuniary gain." Rule 7.03 prohibits a lawyer from

class members who have received court-approved notice is not solicitation. In fact, fourteen of the twenty billing entries Defendants object to as 'solicitation' specifically refer to the *contemporaneous filing of Court-authorized consent forms during the notice period.*" Doc. 224 at 1–2 (emphasis in original). They state the plaintiffs' counsel has solicited no prospective clients and contact mentioned in the billing entries refers to a response to an inquiry. Doc. 224 at 2.

**B.    *Reasonable Attorney's Fees***

*1.    Lodestar Approach*

Under FLSA, a court must "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Reasonable fee awards are mandatory for prevailing FLSA plaintiffs. *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1542 (11th Cir. 1985).

To decide attorney's fees in a FLSA case, a court applies the lodestar approach in *Hensley v. Eckerhart*, 461 U.S. 424 (1983).[17] *Martinez v. Hernando Cty. Sheriff's Office*, 579 F. App'x 710, 713 (11th Cir. 2014). The Court's "starting point" is a calculation of the lodestar, which is "the number of hours reasonably expended … multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. To arrive at a

---

seeking professional employment for a matter from a prospective client "who has not sought the lawyer's advice regarding employment … when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain."

[17]FLSA cases require an additional consideration: judicial review of the reasonableness of attorney's fees to assure not only that counsel is adequately compensated but also that no conflict of interest taints the amount the employee recovers under the settlement agreement. *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009). Because the settlement terms were negotiated separately, there is no conflict here.

reasonable amount, a court then must consider factors that may require an adjustment of the lodestar.[18] *Id.* at 433–37.

The movant has "the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Id.* at 437. To satisfy that burden, the movant must produce more than an affidavit of the lawyer who performed the work. *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).

If evidence is inadequate, a court may reduce an award. *Hensley*, 461 U.S. at 433–34. A court may "make the award on its own experience." *Norman*, 836 F.2d at 1303. A court may exclude unsupported requests altogether. *U.S. ex rel. Jacobs v. Patrol Servs. Inc.*, 202 F. App'x 357, 363–64 (11th Cir. 2006). Or a court may award fees at the lowest rate. *Duckworth v. Whisenant*, 97 F.3d 1393, 1398 (11th Cir. 1996).

---

[18]In their arguments on determining the lodestar, the plaintiffs reference the twelve factors in *Johnson v. Ga. Hwy. Exp., Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *overruled on other grounds, Blanchard v. Bergeron*, 489 U.S. 87, 91–93 (1989). The factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the lawyer due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the lawyer; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* The Supreme Court has repeatedly criticized the *Johnson*-centric approach—one widely used *before* the Court adopted the lodestar approach—observing it "gave very little actual guidance to district courts" and lamenting that "[s]etting attorney's fees by reference to a series of sometimes subjective factors placed unlimited discretion in trial judges and produced disparate results." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010). The Court explained the lodestar approach, in contrast, produces a rough approximation of the fee a prevailing lawyer would have received from a paying client, is readily administrable, and is objective. *Id.* at 551–52. "The *Johnson* factors may be relevant in adjusting the lodestar amount, but no one factor is a substitute for multiplying reasonable billing rates by a reasonable estimation of the number of hours expended." *Blanchard*, 489 U.S. at 94. This report and recommendation organizes the analysis of the requested attorney's fees under the lodestar approach.

Whatever the court decides, its order "must allow meaningful review"; the court "must articulate the decisions it made, give principled reasons for those decisions, and show its calculation." *Norman*, 836 F.2d at 1304.

2.      *Reasonable Hours*

The first part of the lodestar approach requires a court to determine the hours reasonably expended and exclude any that had not been. *Hensley*, 461 U.S. at 433−34.

"Exclusions for excessive or unnecessary work on given tasks must be left to the discretion of the district court." *Norman*, 836 F.2d at 1301. "Cases may be overstaffed, and the skill and experience of lawyers vary widely." *Hensley*, 461 U.S. at 434. Lawyers "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id.*

"[A] lawyer may not be compensated for hours spent on activities for which he would not bill a client of means who was seriously intent on vindicating similar rights, recognizing that in the private sector the economically rational person engages in some cost benefit analysis." *Norman*, 836 F.2d at 1301. There is "nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Id.* at 1302.

Because paralegals and law clerks often perform work "that might otherwise be performed by a lawyer and billed at a higher rate," such as "factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence," a court may compensate a successful litigant for time spent by a paralegal if the prevailing practice in the local community is to separately bill for a paralegal's work. *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285–88 (1989).

27

Because clerical work is usually subsumed in the rates already charged by lawyers, *id.* at 285, courts will exclude or reduce hours for clerical work. *Miller v. Kenworth of Dothan, Inc.*, 117 F. Supp. 2d 1247, 1261 (M.D. Ala. 2000). "Purely clerical or secretarial tasks that require no legal skill or training, such as converting pleadings to PDF … and filing or e-filing documents, should not be billed at a paralegal rate regardless of who performs them." *Ortega v. Berryhill*, No. 16-24697-CIV, 2017 WL 6026701, at *2 (S.D. Fla. Dec. 5, 2017) (unpublished). Clerical tasks also include calendaring deadlines. *Knight v. Paul & Ron Enterprises, Inc.*, No. 8:13-cv-310-T-36EAJ, 2015 WL 2401504, at *8 (M.D. Fla. May 19, 2015) (unpublished).

Billing in one-tenth-an-hour increments is customary because using a smaller minimum unit of six minutes avoids the risk of questionable billing through repeated excessive rounding up. *Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 849 (6th Cir. 2013). Still, billing in larger increments is not a per se basis for a reduction; a reduction remains discretionary. *Id.* Because the concern is overbilling, "only fee reductions, not fee denials, are a proper exercise of discretion." *Id.* "Quarter-hour billing cannot mathematically warrant a fee reduction greater than 60% relative to tenth-of-an-hour billing, and in most cases district courts should apply much lower percentage reductions—the purpose is to counter over-billing, not punish the failure to use tenth-of-an-hour billing." *Id.* (internal footnote omitted). A reduction may be warranted to account for possible windfall, *George v. GTE Dirs. Corp.*, 114 F. Supp. 1281, 1292 (M.D. Fla. 2000), or to address billing for tasks that likely took a fraction of fifteen minutes, *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 949 (9th Cir. 2007).

"Block billing"—the practice of including multiple tasks in a single entry— "makes judicial review unnecessarily difficult and warrants reduction of the number of hours claimed." *Zachloul v. Fair Debt Collections & Outsourcing*, 8:09-cv-128-T-27MAP, 2010 WL 1730789, at *3 (M.D. Fla. Mar. 19, 2010) (unpublished), *report and recommendation adopted*, 2010 WL 1727459. "Attorneys should 'maintain billing time records in a manner that will enable a reviewing court to identify distinct

claims,' and when they include multiple tasks in a single time entry, it is difficult for the court to determine the amount of time spent on particular tasks." *Id.* (quoting *Hensley*, 461 U.S. at 437). "While attorneys cannot be expected to account for every second of their time, they should be expected to explain in discrete entries the nature of the work that they want a client or opposing party to pay them[.]" *Kearney v. Auto-Owners Ins. Co.*, 713 F. Supp. 2d 1369, 1378 (M.D. Fla. 2010).

There is no "hard and fast rule" regarding travel time. *Martinez*, 579 F. App'x at 714. But a court must exclude hours if it would be unreasonable to bill a client for those hours, and "a fee applicant seeking to recover expenses incurred for retaining non-local counsel generally must show a lack of attorneys practicing in that place who are willing and able to handle his claims." *Id.* (internal quotation marks omitted).

"Time spent procuring potential plaintiffs is obviously not expended on the litigation because until the attorney has a client, there is no case to litigate." *ACLU v. Barnes*, 168 F.3d 423, 435 (11th Cir. 1999). But time spent interviewing or corresponding with potential plaintiffs "may be compensable" if it is done to gather information helpful for litigation and not for solicitation. *Id.* at 436.

When a court finds hours are too high, it has two choices: "it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins v. Wrap it Up*, 548 F.3d 1348, 1350 (11th Cir. 2008). But a court may not "double discount" by, for example, reducing hours through an hour-by-hour analysis and then including those hours in an across-the-board cut. *Id.* at 1351–52.

An hour-by-hour analysis contemplates that a judge can "feasibly and expeditiously engage in such a precise review." *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994). If "fee documentation is voluminous," an hour-by-hour review may be "impractical" and "a waste of judicial resources." *Id.* If reducing by a percentage, a court must articulate the reason for selecting the percentage. *Id.*

29

Turning to this case: it is not substantively complex relative to other federal cases (for example, those that involve technical patents, sophisticated commercial transactions, or foreign tax codes). FLSA is straightforward, case law is plentiful, and the issues presented are common to FLSA actions. But this case is administratively complex compared to other federal cases. Counsel had to administer the notice and move forward with seventy-one plaintiffs with differing work histories.

With that in mind, the undersigned has carefully reviewed the billing records. They are voluminous: 84 pages with single-spaced entries starting in January 2016 and continuing to October 2018, made by five timekeepers with rates varying by timekeeper and by time period. Doc. 219-4.

The records reflect the practice of routine billing in quarter-hour increments, with only one among hundreds of entries less than a quarter hour[19] and no indication hours were ever rounded down instead of up. *See generally* Doc. 219-4. The records reflect the practice of block billing, with nearly all single entries describing multiple tasks.[20] *See generally* Doc. 219-4. The records reflect varying degrees of detail.[21] *See generally* Doc. 219-4. The records reflect many conferences with many lawyers— sometimes four—each billing separately without specification of unique contribution despite all having purported FLSA expertise and Starzyk & Associates having

---

[19]See Doc. 219-4 at 9 (September 2, 2016, entry by Crain for .2 hours to download, save, and review an unopposed motion for more time to respond to the motion for conditional certification).

[20]See, for example, Doc. 219-4 at 7 (August 24, 2016, entry by Karns showing ten hours of work for "Draft Motion for Conditional Certification and Exhibits, calls and emails to Gail Lockwood, Denny Martin, Jorge Malta, Pamela Bowe and Juliano Valdivia").

[21]Compare, for example, Doc. 219-4 at 5 (July 26, 2016, entry by Mitchell stating, "E-mail Amber Karns regarding status"), with Doc. 219-4 at 6 (July 29, 2016, entry by Karns stating, "Receipt and review of electronic filings of Original Complaint and Pro Hac Vice motions; follow up e-mails with Gail Lockwood and Jorge Malta; recon regarding Judge Davis; e-mails with Mike Starzyk, Megan Mitchell and Melissa Crain same").

particular expertise with FLSA cases involving insurance adjusters.[22] *See generally* Doc. 219-4. The records reflect that between approximately five and ten percent of the time recorded by Starzyk, Karns, and Mitchell was for travel between Texas and Florida for the discovery hearing (Karns), four depositions (Karns and Mitchell), and the mediation (Starzyk and Karns),[23] with no attorney residing in Florida as required by Local Rule 2.02. *See generally* Doc. 219-4. And the records reflect that Crain sometimes billed for clerical work (i.e. work that requires no legal training, such as e-filing documents).[24]

For the reasons presented by the defendants, a reduction of hours to address those matters is warranted. To spare judicial resources that would have to be expended to parse the voluminous records, to avoid possible double discounting that

---

[22]See, for example, Doc. 220-3 at 1–15 (defendants' chart showing fifteen multiple-lawyer conferences between January 11, 2016, and April 21, 2018).

[23]See, for example, Doc. 219-4 at 41 (January 18, 2018, entry by Karns for five hours at $1,700 to, among other tasks, travel from Texas to Florida for a discovery hearing), 42 (January 19, 2018, entry by Karns for six hours at $2,040 to, among other tasks, return to Texas), 63 (April 24, 2018, entry by Karns for seven hours to, among other tasks, travel from Texas to Florida for depositions), 64 (April 25, 2018, entry by Mitchell for ten hours to, among other tasks, travel from Texas to Florida for depositions), 65 (April 27, 2018, entries by Karns and Mitchell for twelve hours each to, among other tasks, return to Texas), 66 (May 1, 2018, entries by Starzyk for four hours and Karns for seven hours to, among other tasks, travel from Texas to Florida for mediation), 66–67 (May 2, 2018, entries by Starzyk for nine-and-a-half hours and Karns for ten hours to, among other tasks, return to Texas).

In contending they had unsuccessfully tried to affiliate with counsel in the Jacksonville area, the plaintiffs do not explain their efforts. *See generally* Doc. 219 at 24. From the large number of Florida attorneys who routinely bring FLSA collective actions, and from the plaintiffs' ability to retain local counsel when Karns left the firm (the only attorney licensed to practice in Florida), a reasonable inference may be made that the efforts were less than robust. The presence of local counsel could have minimized travel between Texas and Florida by multiple lawyers.

[24]See, for example, Doc. 219-4 at 8 (August 26, 2016, entry by Crain for e-filing a consent form), 9 (September 6, 2016, entry by Crain for reviewing an endorsed order granting a motion for an extension of time and calendaring the new deadline), 14 (November 10, 2016, entry by Crain for e-filing an answer to interrogatories).

could occur using the defendants' proposed across-the-board and specific reductions, and to account for the impossibility of precision given counsel's practice of block billing, the undersigned recommends an across-the-board reduction of all hours of twelve percent. In recommending this percentage—admittedly difficult to pinpoint—the undersigned attempts to best approximate a reasonable number of hours for the work performed.

The plaintiffs' reliance on three cases in the Eleventh Circuit assertedly approving Starzyk & Associates's practice of billing in quarter-hour increments is unjustified. In *Hanze*, the parties submitted a joint motion for settlement approval with no dispute over attorney's fees. Doc. 51 at 3 (8:17-cv-2432-T-17AAS). They attached a motion for attorney's fees as an exhibit but did not docket it as a motion for review. Doc. 51-2 (8:17-cv-2432-T-17AAS). The Court entered an order approving the settlement without analyzing attorney's fees. Doc. 52 (8:17-cv-2432-T-17AAS). In *Branham*, the parties filed only a joint motion for settlement approval with this reference: "Plaintiffs' counsel will receive $438,958.14." Doc. 41 at 3 (No. 1:15-cv-2401-RWS (N.D. Ga.)). No separate motion for attorney's fees explained the rates or billing practice, and the motion was unopposed. Doc. 41 (No. 1:15-cv-2401-RWS (N.D. Ga.)). In *Tabron*, the parties filed only a joint motion for settlement approval with one line stating, "Plaintiffs' counsel - $344,933.33 (for this case and Whitman)." Doc. 26 at 3 (No. 1:16-cv-940-RWS (N.D. Ga.)). The fees were undisputed, and no evidence of rates or billing practices was submitted. Doc. 26 (No. 1:16-cv-940-RWS (N.D. Ga.)).

Here, unlike in those cases, the practice of billing in quarter-hour increments has been challenged. The recommended reduction considers that the practice—combined with the practice of block billing—has inhibited reasonableness review, even with the detail otherwise provided.

The plaintiffs' observations that the defendants are represented by four attorneys from three offices in two states and that more than one attorney for the defendants was present to defend two of three depositions, Doc. 224 at 3–4, do not

32

help their position. Staffing by opposing counsel is not the standard. To the extent staffing by opposing counsel could relate to reasonableness of hours claimed by the other side, the defendants' staffing here does not because the plaintiffs provide no evidence that those attorneys billed and obtained payments from their clients for all of the hours of all of the attorneys.

The recommended reduction does not consider some hours the defendants contend should be reduced or eliminated. Reviewing other actions to prepare for this action was reasonable considering that happenings in similar actions relate to the defense and settlement of this action.[25] And the plaintiffs have shown the work alleged to be solicitation of potential clients relates not to solicitation but to filing a consent-to-join notice or engaging in other non-solicitation communications. *See* Doc. 224 at 1–2. Reducing the total claimed hours by twelve percent is warranted.

3.    *Reasonable Rates*

The second part of the lodestar approach requires a court to determine the reasonable hourly rates. *Hensley*, 461 U.S. at 433–34. A "reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299.

Bargained-for provisions on attorney's fees in a settlement agreement control the issue of attorney's fees. *Embree v. Medicredit, Inc.*, 752 F. App'x 697, 700 (11th Cir. 2018) (citing *Pottinger v. City of Miami*, 805 F.3d 1293, 1300 (11th Cir. 2015)).

---

[25]The disputed entries state: "Telephone conferences with fellow-TELA member regarding possible parallel overtime case to be filed in Oklahoma; e-mails with Mike Starzyk, Amber Karns and Matt Yezierski regarding same" (by Mitchell on March 2, 2017); and "Telephone conference with [Amber Karns, Megan Mitchell, and Michael Starzyk] regarding second lawsuit and second conditional certification and response to [defense attorney] Michael Francis regarding same," (by Starzyk, Karns, and Mitchell on December 21, 2017). Doc. 220-1.

Because the parties agree to the requested rates as part of the settlement agreement, Doc. 218-1 at 4 (I.C), using those rates is appropriate.[26]

### 4.   *The Lodestar*

The number of hours reasonably expended (those claimed, reduced by twelve percent) multiplied by the agreed-to rates results in a lodestar of $400,262:

| Name | Hourly Rate | Hours | Amount |
|---|---:|---:|---:|
| Michael Starzyk, Esquire | $475 | 106.04 | $50,369 |
| Michael Starzyk, Esquire | $450 | 11.88 | $5,346 |
| Michael Starzyk, Esquire | $425 | 13.64 | $5,797 |
| April L. Walter, Esquire | $450 | 150.48 | $67,716 |
| April L. Walter, Esquire | $425 | 1.76 | $748 |
| April L. Walter, Esquire | $400 | 10.56 | $4,224 |
| Amber L. Karns, Esquire | $340 | 327.14 | $111,227.60 |
| Amber L. Karns, Esquire | $325 | 166.32 | $54,054 |
| Megan M. Mitchell, Esquire | $300 | 172.48 | $51,744 |
| Megan M. Mitchell, Esquire | $275 | 9.46 | $2,601.50 |
| Melissa Crain, Paralegal | $130 | 357.19 | $46,434.70 |

---

[26]Starzyk explains the reason for rate increases ("Following a periodic review of rates in each of 2016, 2017, and 2018, some attorney's fee rates increased," Doc. 219-2 at 11 n.1), but the increases were not always consistent. For example, he consistently billed at $425 an hour through at least the first half of 2016 (*see, e.g.*, Doc. 219-4 at 1–12), then in November 2016 at both $425 and $475 (Doc. 219-4 at 13), then in January 2017 at both $450 and $425. *See, e.g.*, Doc. 219-4 at 16–17. Because the defendants do not challenge the rates, this Court need not address the matter.

The plaintiffs cite non-binding cases for the notion that rates should be based on a nationwide market assessment. *See* Doc. 219 at 15–16. This Court has found a nationwide market assessment could be contrary to binding Eleventh Circuit precedent. *See U.S. ex rel. Nichols v. The Sleep Med. Ctr.*, No. 3:12-cv-1080-J-39PDB (Docs. 100, 101). In this case, as in that case, there may be additional reasons why a nationwide market assessment would be unwarranted. Because the parties have agreed to rates, this Court need not address the matter.

| Total | | | **$400,262.00** |
|---|---|---|---|

5.    *Lodestar Adjustment*

After determining the lodestar, a court must consider "the necessity of an adjustment[.]" *Norman*, 836 F.2d at 1302. On a downward adjustment, if a party achieved limited success, "the lodestar must be reduced to an amount that is not excessive." *Id*. On an upward adjustment, there is a "strong" presumption the lodestar suffices, and an upward adjustment may not be made based on any factor subsumed in the lodestar. *Perdue*, 559 U.S. at 553–54.

Neither side contends—and the circumstances do not suggest—an adjustment is warranted. Because the plaintiffs achieved substantial success, a downward adjustment is unwarranted. Because the lodestar already considers all of the pertinent factors (including skill of counsel), an upward adjustment is unnecessary.

**C.    Costs under 28 U.S.C. § 1920**

Section 1920 of Title 28 of the United States Code allows as taxable costs only:

(1)    Fees of the clerk and marshal;

(2)    Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3)    Fees and disbursements for printing and witnesses;

(4)    Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5)    Docket fees under section 1923 of this title;

(6)    Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

Section 1920 provides "rigid controls on cost-shifting in federal courts." *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 444 (1987). "[A]s is evident from § 1920," costs are "limited to relatively minor, incidental expenses," and "almost always amount to less than the successful litigant's total expenses in connection with a lawsuit." *Taniguchi v. Kan Pacific Saipan, Ltd.*, 566 U.S. 560, 573 (2012) (internal quotation marks omitted). A court may decline to tax costs in § 1920 but may not tax costs not in § 1920. *Crawford*, 482 U.S. at 442–43.

Proposed costs "should always be given careful scrutiny." *Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227, 235 (1964), *disapproved of on another ground by Crawford*, 482 U.S. at 443. If a prevailing party shows requested costs are taxable, the losing party may rebut the presumption favoring their award, *Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 639 (11th Cir. 1991), by presenting at least some rationale why the court should decline to tax them, *168th & Dodge, LP v. Rave Reviews Cinemas, LLC*, 501 F.3d 945, 958 (8th Cir. 2007).

Under "Fees of the ... marshal," allowable costs include costs for private service of process in an amount that does not exceed what the United States Marshals Service charges. *EEOC v. W&O, Inc.*, 213 F.3d 600, 624 (11th Cir. 2000). For in–person service, the Marshals Service charges $65 an hour "plus travel costs and any other out-of-pocket expenses." 28 C.F.R. § 0.114(a)(3). "Out-of-pocket expenses include ... advertising, inventorying, storage, moving, insurance, guard hire, ... and any other third-party expenditure incurred in executing process." 28 C.F.R. § 0.114(b). "If a party seeks to recover private service fees without providing evidence of what hourly rate the private server charged, how much time he spent trying to serve process, or other information needed to determine if his rate exceeded that charged by the Marshal, then the appropriate practice is to award the lesser of the amount that the party actually paid and the minimum charge of the U.S. Marshals." *Oleksy v. Gen. Elec. Co.*, No. 06–cv–1245, 2016 WL 7217725, at *3 (N.D. Ill. Dec. 12, 2016) (unpublished) (internal quotation marks omitted).

Courts disagree on whether fees for special admission are taxable. *Compare, e.g., Kalitta Air L.L.C. v. Cent. Tex. Airborne Sys. Inc.*, 741 F.3d 955, 958 (9th Cir. 2013) (not taxable), *with Craftsmen Limousine, Inc. v. Ford Motor Co.*, 579 F.3d 894, 898 (8th Cir. 2009) (taxable), *and United States ex rel. Gear v. Emergency Med. Assocs. of Ill., Inc.*, 436 F.3d 726, 730 (7th Cir. 2006) (taxable). The Eleventh Circuit has not decided the issue. The majority of courts that have decided the issue are in the "not taxable" camp. *Oleksy*, 2016 WL 7217725, at * 2; *see also Blitz Telecom Consulting, LLC v. Peerless Network, Inc.*, No. 6:14-cv-307-Orl-40GJK, 2016 WL 7325544, at * (M.D. Fla. Aug. 31, 2016) (unpublished), *report and recommendation adopted*, 2016 WL 7446390 (collecting cases and finding that most courts in the Eleventh Circuit do not allow recovery of pro hac vice fees under § 1920).

In *Kalitta*, the court provided the following rationale for holding special admission fees are not taxable. The authority in § 1920(1) to tax "[f]ees of the clerk" draws its meaning from 28 U.S.C. § 1914—a nearby section also under Title 28 (Judiciary and Judicial Procedure), Part V (Procedure), Chapter 123 (Fees and Costs). *Kalitta*, 741 F.3d at 957. Section 1914 authorizes district courts to collect only a filing fee and "'such additional fees only as are prescribed by the Judicial Conference of the United States.'" *Id.* (quoting 28 U.S.C. § 1914(a), (b)). The Judicial Conference's fees schedule provides a fee "'[f]or original admission of attorneys to practice'" but does not include fees for pro hac vice admission. *Id.* at 957–58 (quoting 28 U.S.C. § 1914, District Court Miscellaneous Fee Schedule). "[O]riginal admission" refers to "the permanent admission of attorneys to the district court's bar" and not to "the temporary and limited leave to practice before the district court granted by pro hac vice status." *Id.* at 958. "[B]ecause § 1914(b) allows a clerk to collect only those fees prescribed by the Judicial Conference, and the Judicial Conference has not specifically provided for pro hac vice fees, ... § 1920(1) does not allow for an award of pro hac vice fees as taxable costs." *Id.*

The court continued, "This conclusion also comports with the Supreme Court's recent statements emphasizing that 'taxable costs are limited by statute and are modest in scope.'" *Id.* (quoting *Taniguchi*, 132 S. Ct. at 2006). "Given the Court's close reading of the statute and emphasis that '[t]axable costs are limited to relatively minor, incidental expenses,' and, further, that 'costs almost always amount to less than the successful litigant's total expenses in connection with a lawsuit,'" § 1920 is construed narrowly. *Id.* (quoting *Taniguchi*, 132 S. Ct. at 2006). The court recognized that the Seventh and Eighth Circuits reached contrary holdings but was unpersuaded because they preceded the Supreme Court's recent statements on the narrow construction of § 1920 and provide no "clear explanation of their reasons." *Id.* Concluding "the better course is to hew closely to the statute's language, scheme, and context, recognizing that § 1920 is narrow, limited, and modest in scope," the court reversed the award of costs for pro hac vice admission to the prevailing party's counsel. *Id.*

With two exceptions, the plaintiffs have shown the requested costs are taxable under § 1920 as fees of the clerk, fees for transcripts necessarily obtained for use in the case, and fees for making copies necessarily obtained for use in the case. The plaintiffs have made this showing through the itemized list of costs and the plaintiffs' representation that the costs were necessarily incurred. *See* Doc. 219 at 22; Doc. 219-2 ¶ 45. The docket corroborates many of the costs, showing Lockwood's payment of the filing fee, the nature of the case as a collective action and the resulting need for printing pay and personnel records, the progression of the case through discovery, exhibits needed to support the motion for partial summary judgment, and the directive that the parties provide courtesy copies of some papers filed. The presumption favoring costs applies. The defendants have not rebutted the presumption, making no objections to those costs. *See generally* Doc. 220.

Under the persuasive reasoning in *Kalitta*,[27] the plaintiffs are not entitled to the $300 pro hac vice fees as costs under § 1920.[28] And because the plaintiffs have presented no evidence of time spent, travel costs, or any other out-of-pocket expenses for service of process, they are entitled to no more than the $65 an hour the Marshals Service would charge for in-person service.

Reducing costs of $16,051.84 by $783 ($300 + $548 - $65), and awarding $15,268.84 in costs under § 1920, is warranted.

## D.   *Attorney Expenses*

FLSA's penalty provision, 29 U.S.C. § 216(b), provides that the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

The plaintiffs contend attorney expenses for airfare, lodging, postage, delivery, and mediation are recoverable under § 216(b) as "reasonable attorney's fees." Doc. 219 at 23–24. The defendants contend the expenses are not recoverable because they are not enumerated costs under § 1920.[29]

---

[27]The court's conclusion that pro hac vice fees are not considered part of the fees for "original admission" authorized by the Judicial Conference under § 1914 appears to be supported by the Judicial Conference's policy clarification that "the attorney admission fee prescribed in ... the District Court Miscellaneous Fee Schedule does not apply to *pro hac vice* requests" and "courts may charge, at their option, a local fee ... for *pro hac vice* admissions." *See* Judicial Conference of the United States, *Report of the Proceedings of the Judicial Conference of the United States, September 23, 1997, available at* https://www.uscourts.gov/sites/default/files/1997-09_0.pdf (p. 59) (last visited April 23, 2019).

[28]Because the plaintiffs do not seek pro hac vice fees as "attorney's fees," the Court need not consider them as such. The issue may not be straightforward. *Cf. Glenn v. General Motors Corp.,* 841 F. 2d 1567, 1575 (11th Cir. 1988) (holding district court erred in awarding expert witness fees in excess of amount permitted by § 1920; although § 216(b) shifts attorney's fees, it does not shift witness fees).

[29]The plaintiffs do not contend the expenses they seek are recoverable as "costs of the action" under § 216(b), and rightly so. The Eleventh Circuit has held "costs of

No binding precedent expressly holds attorney expenses are recoverable under § 216(b) as attorney's fees. At least five circuit courts of appeal have addressed the issue and held they are. *See West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 395–96 (5th Cir. 2003); *Calderon v. Witvoet*, 112 F.3d 275, 276 (7th Cir. 1997); *Neufeld v. Searle Labs.*, 884 F.2d 335, 342 (8th Cir. 1989); *Herold v. Hajoca Corp.*, 864 F.2d 317, 323 (4th Cir. 1989); *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987).[30]

In *Calderon*, the Seventh Circuit explained attorney expenses, while not recoverable as costs under § 1920, are recoverable as attorney's fees "because travel and meal expenses are the sort of things that a lawyer includes with a bill for professional services." 112 F.3d at 276. In *Reichman*, the Second Circuit explained, "attorney's fees include expenses that are incidental and necessary to the representation, provided they are reasonable." 818 F.2d at 283 (internal quotation marks omitted). And in *West*, acknowledging the weight of authority, the Fifth Circuit discerned "no reason not to follow the lead of our sister circuits." 330 F.3d at 396.

In interpreting whether attorney expenses are recoverable as attorney's fees under other statutes, the Eleventh Circuit has used a rationale similar to the rationale used in *Calderon* and *Reichman*.

In *Dowdell v. City of Apopka*, the court, interpreting 42 U.S.C. § 1988 (allowing recovery of a "reasonable attorney's fee as part of the costs"), held "reasonable attorneys' fees" include reasonable attorney expenses for travel, telephone usage, and

---

the action" under § 216(b) means costs enumerated in § 1920. *Glenn*, 841 F. 2d at 1575; *accord* 29 C.F.R. § 790.22(d) (Department of Labor regulation referring to "costs of the action" in § 216(b) as "court costs").

[30]*West*, *Neufeld*, *Herold,* and *Reichman* involved claims under the Age Discrimination in Employment Act, which, under 29 U.S.C. § 626(b), incorporates § 216(b), making those cases equally applicable to FLSA cases.

postage because "attorneys' fees and expenses are inseparably intertwined as equally vital components of the costs of litigation." 698 F.2d 1181, 1190 (11th Cir. 1983).[31]

And in *Evans v. Books-A-Million*, the court, interpreting an ERISA provision (allowing recovery of a "reasonable attorney's fee" and "costs of action," 29 U.S.C. § 1132(g)(1)), and citing both *Reichman* and *Dowdell*, held "the definition of costs under § 1920 is not controlling" and "expenses for mediation, legal research, postage and travel may be awarded as attorneys' fees" if "the district court determines they were reasonably incurred in the course of case preparation, settlement, or litigation" and "it is the prevailing practice in the legal community to bill fee-paying clients separately for those expenses." 762 F.3d 1288, 1299 (11th Cir. 2014).

In a FLSA case, relying on *Dowdell* and some of the cases from other circuits interpreting § 216(b), this Court has held that "[r]easonable litigation expenses are ordinarily included in an award of a statutory attorneys' fee." *Wales v. Jack M. Berry, Inc.*, 192 F. Supp. 2d 1313, 1329 (M.D. Fla. 2001).[32]

---

[31]In *Dowdell*, the court also considered the underlying policies of § 1988. 698 F.2d at 1189. "First, if the real income of civil rights litigators is decreased because they must absorb costs which are generally billable in other types of cases, the market result will be to channel attorneys toward more remunerative types of litigation. Decreasing the supply of attorneys necessarily decreases the access to the courts of victims of civil rights violations." *Id.* "Second, the private attorney general doctrine dictates that civil rights lawyers should be fully compensated." *Id.*

Section 216(b) shares a similar purpose of encouraging private enforcement of the law and ensuring aggrieved persons have access to judicial process to remedy violations.

[32]In some post-*Evans* cases, district courts in the Eleventh Circuit have declined to award attorney expenses as attorney's fees under § 216(b). The cases are unpersuasive. In *Oreilly v. Art of Freedom, Inc.*, the Southern District of Florida merely observed the Eleventh Circuit has not extended *Evans* beyond ERISA. No. 17-CV-21251-WILLIAMS/LOUIS, 2018 WL 6616445, at *8 (S.D. Fla. Dec. 14, 2018) (unpublished), *report and recommendation adopted*, 2019 WL 1115879. In *Willoughby v. Youth Villages, Inc.*, the Northern District of Georgia declined to award expenses for mail, research, and travel because they were not enumerated expenses

41

Discerning no good reason the rationale in *Evans* would not apply equally to § 216(b), attorney expenses are recoverable under § 216(b) as attorney's fees if they were "reasonably incurred in the course of case preparation, settlement, or litigation" and "it is the prevailing practice in the legal community to bill fee-paying clients separately for those expenses." *See Evans*, 762 F.3d at 1299 (quoted). This conclusion is bolstered by the apparent unanimity of courts of appeal that have considered the issue. *See West*, 330 F.3d 395–96; *Calderon*, 112 F.3d 276; *Neufeld*, 884 F.2d at 342; *Herold*, 864 F.2d at 323; *Reichman*, 818 F.2d at 283.

Based on the undersigned's knowledge and experience, the "prevailing practice" in Jacksonville is to "bill fee-paying clients separately for" expenses of travel, lodging, postage, and mediation. *See Evans,* 762 F.3d at 1299 (quoted). The defendants do not contend otherwise. The plaintiffs are entitled to reasonable attorney expenses.

The defendants state they "also object to the recovery of these fees as duplicative and excessive," arguing the plaintiffs "should not be permitted to recover costs for the travel of multiple attorneys to attend routine matters … absent some

---

in § 1920, but the court did not consider whether they were reimbursable as reasonable attorney's fees. 219 F. Supp. 3d 1263 (N.D. Ga. 2016).

The defendants quote *Villanueva-Gonzalez v. Grainger Farms, Inc.*, 2:09-cv-716-FTM-36, 2011 WL 5834677 (M.D. Fla. Aug. 9, 2011) (unpublished), *report and recommendation adopted*, 2011 WL 5834629), for the proposition that "'binding precedent in the Eleventh Circuit establishes that a prevailing party is not entitled to mediation expenses, meals, postage, online research, travel and lodging expenses because these expense [sic] are considered costs and are not recoverable under 28 U.S.C. § 1920.'" Doc. 220 at 9. In *Villanueva-Gonzalez*, the Court relied on an unpublished Eleventh Circuit decision, *Gary Brown & Assocs., Inc. v. Ashdon, Inc.*, 268 F. App'x 837, 846 (11th Cir. 2008). Unpublished opinions are not binding precedent. 11th Cir. R. 36-2. And *Gary Brown* discusses only costs under § 1920, citing *Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir. 1996), for the proposition that costs of mediation, meals, postage, airfare, and lodging are not awardable under § 1920. *Gary* Brown, 268 F. App'x at 846.

showing that each attorney in attendance provided a distinct contribution and his or her attendance was reasonably necessary."[33] Doc. 220 at 9 n.5.

A court may cut travel expenses if outside-market counsel was unnecessary and the plaintiff would not have incurred travel and meal expenses had the plaintiff hired local counsel. *See Mock v. Bell Helicopter Textron, Inc.*, 456 F. App'x 799, 803 (11th Cir. 2012).

Reducing the expenses for attorney travel and lodging by forty percent is warranted (for total travel expenses of $3,069.37 and total lodging expenses of $1,780.73), for the same reason a reduction in hours for attorney travel is warranted (failure to retain local counsel and duplicative work). Awarding expenses of $6,602.14 ($3,069.37 + $1,780.73 + 1050 + 702.04) is warranted.

## IV.   Oral Argument

The plaintiffs state, "In the event the Court is inclined to reduce Class Counsel's rates or lodestar recovery negotiated under the parties' arms-length settlement, Plaintiffs respectfully request a hearing." Doc. 219 at 25. The defendants do not address the request for a hearing. *See generally* Doc. 220. Due to adequate briefing, the undersigned finds a hearing unnecessary to prepare this report and recommendation but leaves the request with Judge Davis to determine whether oral argument on the motions, this report and recommendation, and any objections and responses would be helpful.

---

[33]In a footnote, the defendants state, "Notably, Plaintiffs have not provided any documentation or receipts to substantiate the expenses claimed" for legal research fees, delivery fees, facsimile fees, parking fees, transportation costs, airport baggage fees, and meal costs. Doc. 220 at 10 n.6. The plaintiffs are not seeking reimbursement for those expenses. *See* Doc. 219-10 at 4–5 (category titled "Unreimbursed Expense (Billing Judgment)").

## V.     Recommendation[34]

The undersigned recommends:

1. **granting in part** the parties' motion for settlement approval, Doc. 218, and approving the parties' settlement, Doc. 218-1, as a fair and reasonable resolution of disputed issues but limiting the retention of jurisdiction to 120 days from entry of judgment;

2. **granting in part** the plaintiffs' motion for attorney's fees, costs, and expenses, Doc. 219, and approving as reasonable $400,262.00 in attorney's fees, $15,268.84 in costs, and $6,602.14 in expenses; and

3. **entering** final judgment that states (in substantially the same form requested by the parties):

Whereas, the original plaintiff, Gail Lockwood (individually and on behalf of each person who has filed a consent to join the action as a plaintiff and who has not voluntarily dismissed his or her claim), and the defendants CIS Services, LLC; CIS Claims Services, LLC; CIS Group of Companies, LLC; CIS Group, LLC; and Michael E. Stanley have entered into a settlement agreement and release that settles all claims pertaining to the alleged failure to pay overtime wages to Lockwood and the consent plaintiffs;

Whereas, the Court has reviewed the settlement agreement and release and has found the terms are fair, reasonable, and adequate;

Whereas, the Court has approved the settlement agreement and release; and

Whereas, under the settlement agreement and release, Lockwood and the consent plaintiffs are conclusively deemed to have released

---

[34]"Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

any "Released Claims" against the "Released Parties" as defined in the settlement agreement and release;

Now, therefore, the Court enters judgment and dismisses this action with prejudice under the settlement agreement and release and order approving the settlement and establishing attorney's fees and costs.

The Court permanently enjoins and restrains all individuals from asserting any claims released under the settlement agreement and release.

Without affecting the finality of this judgment, the Court reserves jurisdiction over this action, Lockwood, the consent plaintiffs, and the defendants for 120 days from this judgment to supervise the implementation, enforcement, construction and interpretation of the settlement agreement and release.

**Done** in Jacksonville, Florida, on May 3, 2019.

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:    The Honorable Brian J. Davis
      Counsel of Record